IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **U.S. RENAL CARE, INC. d/b/a U.S. RENALCARE CENTRAL YORK, DIALYSIS individually and as ASSIGNEE OF PATIENT, WW,** | : : : : : | |
| | : | **Civil No. 1:14-CV-2257** |
| **Plaintiff/ Counter-Defendant** | : : | |
| | : | |
| **v.** | : : | |
| | : | |
| **WELLSPAN HEALTH, WELLSPAN MEDICAL PLAN, THE PLAN ADMINISTRATOR OF WELLSPAN MEDICAL PLAN, and SOUTH CENTRAL PREFERRED, INC.,** | : : : : : : | |
| | : | **Judge Sylvia H. Rambo** |
| **Defendants/ Counter-Plaintiffs** | : : | |

**M E M O R A N D U M**

This action is a dispute between a healthcare provider and an employee welfare benefit plan regarding alleged overpayments to the healthcare provider made pursuant to the plan, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff brings claims pursuant to ERISA, as well as other state law and federal claims, regarding Defendants" recoupment of the alleged overpayments. Presently before the court is Defendants" motion to dismiss Plaintiff's complaint, as well as Plaintiff's motion to dismiss Defendants" counterclaims. For the reasons stated herein, the court will grant in part and deny in part Defendants" motion to dismiss the complaint, and deny in its entirety Plaintiff's motion to dismiss the counterclaims.

## I.  **Background**

A court deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) may consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citations omitted).  "A document forms the basis of a claim if the document is ,integral to or explicitly relied upon in the complaint.'"  *Id*. (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Thus, for the purposes of the motion *sub judice*, the court considers and accepts as true all well-pleaded allegations contained in the complaint (Doc. 1), *see Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)), as well as exhibits attached to, and documents relied upon in, the complaint, and such consideration does not convert the motion to dismiss into a motion for summary judgment.  *Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996); *see also Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

### A.  **Facts**

Plaintiff U.S. Renal Care, Inc. d/b/a U.S. Renal Care Central York Dialysis ("Plaintiff") is a medical services provider that offers dialysis services.  (Doc. 1, ¶¶ 20-21.)

Defendant Wellspan Health ("Wellspan") is the parent organization of Defendant Wellspan Medical Plan (the "Plan"), which is a self-funded employee welfare benefit plan within the meaning of § 3(1) of ERISA, 29 U.S.C. § 1002(1), that provides medical benefits to eligible employees and their eligible dependents. (*Id.*, ¶¶ 6-8.) Defendant South Central Preferred, Inc. ("SCP" and, collectively with Wellspan and the Plan "Defendants"), which is also owned by Wellspan, acts as the claims administrator, Preferred Provider Organization, and Third Party Administrator ("TPA") for the Plan, and performs the fiduciary duties of plan administration, including making initial benefits determinations. (*Id.*, ¶¶10, 25.) Defendants work with Pennsylvania Preferred Health Network ("PPHN") as their healthcare network to provide benefits to beneficiaries under the Plan. (*Id.*, ¶ 12.)

According to the Plan Document and Summary Plan Description ("SPD"),[1] the Plan provides four tiers of benefits: Tier 1 applies to beneficiaries who elect to be treated at a Wellspan provider or facility, and benefits are generally paid at 100%; Tier 2 applies to beneficiaries who elect to be treated at a "Select" facility or provider from SCP, and benefits are generally paid at 90%; Tier 3 applies to beneficiaries who elect to receive treatment from an out-of-network provider that is outside the PPHN service area, and benefits are generally paid at 80% of the Usual Customary and Reasonable Charge ("UCR"), which is based on a calculation of average costs for medical services in that area; and Tier 4 applies to

---

[1]       While there are three versions of the SPD relevant to the instant dispute, one for each year of coverage in 2012, 2013, and 2014 (*id.*, ¶ 30 n.2), the terms of the SPDs are substantially similar and therefore will be referred to as a single SPD for convenience.

beneficiaries who elect to receive care from an out-of-network provider that is inside the

PPHN service area, and benefits are generally paid at 50% of UCR. (*Id*., ¶¶ 30, 32-36.)

In the event of an adverse benefit determination, the Plan states that the

administrator must provide written notice of the denial, which includes: the reasons for the

denial; a reference to the plan provisions upon which the denial was based; a description of

any additional information needed from the beneficiary to perfect the claim; notice that the

beneficiary is entitled to request a review of the claim denial and a description of the appeal

process, and; a statement that the beneficiary has a right to bring a civil action under ERISA

following any denial or appeal. (*Id*., ¶¶ 42-43.) The Plan defines an adverse benefit

determination as "any claim that is not paid at 100% . . . includ[ing] any amounts applied to

your deductible or co-insurance as well as any amount that exceeds a Plan limit." (*Id*.)

Beginning on December 7, 2012 and continuing up to the present, Plaintiff has

provided life-sustaining dialysis services to patient WW, who is a beneficiary of the Plan

through his spouse. (*Id*., ¶¶ 11, 20-21.) In return for medical services, WW assigned all of

his benefits and rights under the Plan to Plaintiff pursuant to an Assignment of Benefits

("AOB"), which included the assignment of any legal or administrative claims arising under

any ERISA or non-ERISA group health plan, and directed the Plan and its administrators,

fiduciaries, and attorneys to release all plan documents, summary benefit descriptions, and

insurance policies for the Plan to Plaintiff upon request. (*Id*., ¶¶ 27-29.) Throughout the

course of WW's treatment, the Plan was responsible for primary payment of WW's dialysis

treatments pursuant to the terms of the Plan Document and SPD, as well as the Medicare Secondary Payer Provisions of the Social Security Act ("MSP"), and Medicare was responsible for secondary payment. (*Id.*, ¶ 22.) Because there was no participating provider agreement or other contract between the Plan and Plaintiff, Plaintiff was considered an "out-of-network" provider under the terms of the Plan. (*Id.*, ¶ 26.)

Prior to treating WW, and then again for each new benefit year, Plaintiff verified benefits with SCP, which represented that Plaintiff was an out-of-network provider and benefits would be paid at 50% of UCR until WW"s out-of-pocket maximum for each benefit year had been met, and then at 100% of UCR. (*Id.*, ¶ 54-56.) On March 27, 2013, Plaintiff spoke with a representative of SCP regarding a payment Plaintiff had received that was much lower than previous payments for similar claims, and the representative advised that SCP would review payment of the claims. (*Id.*, ¶ 58.) On April 1, 2013, SCP notified Plaintiff that all of WW"s claims from December 7, 2012 through January 14, 2013 had been incorrectly paid at above UCR, and refund requests had been mailed to Plaintiff. (*Id.*, ¶ 59.) Those refund requests were made in varying amounts and stated that overpayment occurred due to an "incorrect benefit/network level" and demanded repayment within thirty days. (*Id.*, ¶ 62-66, 68, 84-85.) On April 26, 2013, Plaintiff appealed the refund demands and requested explanations of the overpayments, as well as a revised and itemized explanation of benefits. (*Id.*, ¶ 67.)

On July 3, 2013, SCP notified Plaintiff that due to the retirement of WW"s spouse on May 1, 2013, Medicare was the primary payer on all claims submitted after that date, and a review of claims was pending the Medicare explanation of benefits. (*Id*., ¶¶ 60, 70.) On August 29, 2013, SCP advised Plaintiff that Medicare rates for out-of-network services provided the appropriate level of benefits under the terms of the Plan, and that all claims from January 2013 up to that date had been referred to the claims department for payment review. (*Id*., ¶ 71.) Between December 23, 2013 and February 27, 2014, Plaintiff engaged in several conversations with representatives at SCP regarding missing or late payments on claims that had been submitted. (*Id*., ¶¶ 72-75.)

By letter dated February 21, 2014, Defendants" attorneys notified Plaintiff that two categories of overpayments had been made to Plaintiff: Category One overpayments resulted from a clerical error on behalf of an employee of SCP, covered dates of service from December 7, 2012 through January 13, 2013, and totaled $59, 752.16; and Category Two overpayments resulted from a mathematical error on behalf of another SCP employee, covered dates of service from January 16, 2013 through October 30, 2013, and totaled $145,920.31. (*Id*., ¶¶ 78-80.) The letter further stated that if Plaintiff did not voluntarily refund the total $205,672.47 of Category One and Two overpayments within ten days, Defendants would recoup the overpayments by withholding then-current and future allowable payments and possibly filing litigation. (*Id*., ¶ 81.) The letter did not include any

information related to Plaintiff's right to a review of the adverse benefits determination or the appeals process in general. (*Id.*, ¶ 93.)

Plaintiff responded via counsel in a letter letter dated March 5, 2014, wherein it disputed the alleged overpayments and Defendants' right to recoup them, and requested the methodology used to calculate the overpayment, any documents relied on in making such calculation, and a complete fee schedule for dialysis services charged by Defendants' non-contracted payers. (*Id.*, ¶¶ 94-96.) Plaintiff sent additional letters on April 15, 2014, May 27, 2014, and August 27, 2014, repeating the sentiments of its March 5, 2014 letter and further requesting the underlying documents it was purportedly entitled to under ERISA, such as the adverse benefit determination. (*Id.*, ¶¶ 104-111, 118.) None of Defendants' responses included any information regarding fee schedules, the methodology used to calculate the alleged overpayments, or any underlying documentation relied upon in calculating the overpayments, but rather reiterated Defendants' intention to recoup the overpayments. (*Id.*, ¶ 99-103, 112-117.) According to the complaint, Defendants have in fact proceeded to recoup the alleged overpayments, withholding nearly $35,000 of payments to Plaintiff for services provided to WW between September 9, 2013 and the initiation of this action. (*Id.*, ¶ 83.)

## B. <u>Procedural History</u>

Plaintiff initiated this action by filing a complaint on November 25, 2014, wherein it asserted claims under both ERISA and Pennsylvania state law due to Defendants'

recoupment of its purported overpayments. (Doc. 1.) Defendants filed a motion to dismiss the complaint on February 18, 2015 (Doc. 19), along with a brief in support thereof on February 23, 2015 (Doc. 20). On February 24, 2015, Defendants filed their own complaint against Plaintiff containing related claims in a separate action, (Civ. No. 1:15-cv-0400, Compl., Doc. 1) (hereinafter "counterclaims"), which the court consolidated into the instant matter on March 16, 2015 (*see* Doc. 25). In their counterclaims, Defendants asserted equitable claims under ERISA relating to the alleged overpayments as well as an unjust enrichment claim under Pennsylvania state law. (*Id*., ¶¶ 104, 107-110.) On April 6, 2015, Plaintiff filed a motion to dismiss Defendants" counterclaims. (Doc. 30.) Both motions to dismiss have been fully briefed and are thus ripe for disposition.

## II.     <u>Legal Standard</u>

Both of the motions to dismiss presently before the court challenge the opposing party"s claims pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion tests the sufficiency of a complaint against the pleading requirements of Rule 8(a), which requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief "in order to ‚give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S 41, 47 (1957)). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to

„state a claim to relief that is plausible on its face.‟" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Thus, when adjudicating a motion to dismiss for failure to state a claim, the court must view all of the allegations and facts in the complaint in the light most favorable to the plaintiff, and must grant the plaintiff the benefit of all reasonable inferences that can be derived therefrom. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). However, the court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *See Reuben v. U.S. Airways, Inc.*, 500 F. App‟x 103, 104 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (stating that district courts "must accept all of the complaint‟s well-pleaded facts as true, but may disregard any legal conclusions").

Ultimately, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Iqbal*, 556 U.S. at 679; *see also Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The "plausibility standard" requires "more than a sheer possibility" that a defendant is liable for the alleged misconduct. *Reuben*, 500 F. App‟x at 104 (citing *Iqbal*, 556 U.S. at 678). Rather, the complaint must show the plaintiff‟s entitlement to relief with its facts. *Steedley v. McBride*, 446 F. App‟x 424, 425 (3d Cir. 2011) (citing *Fowler*, 578 F.3d at 211). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged – but it has not „show[n]‟ – „that the pleader is entitled to relief.‟" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alterations in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555).

To evaluate whether allegations in a complaint survive a Rule 12(b)(6) motion, the district court must initially "take note of the elements a plaintiff must plead to state a claim." *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citations omitted). Next, the court should identify allegations that "are no more than conclusions" and thus, "not entitled to the assumption of truth." *Id*. Lastly, "where there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id*.

A complaint "may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 588 n.8). Rule 8 "„does not impose a probability requirement at the pleading stage,‟ but instead „simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of‟ the necessary element[s]." *Id*. at 234 (quoting *Twombly*, 550 U.S. at 545).

"Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Procedure 12(b)(6) as they do for a complaint." *PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 524 (W.D. Pa. 2011) (citing *United States v. Union*

*Gas Co.*, 743 F. Supp. 1144, 1150 (E.D. Pa. 1990)).  Therefore, the court must "‚accept as true all of the allegations in the [Defendant's counterclaims] and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party.'"  *Wawrzynski v. H.J. Heinz Co.*, Civ. No. 11-cv-1098, 2012 WL 726500, *2 (W.D. Pa. Mar. 6, 2012) (quoting *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989) (alterations in original).

## III.    Discussion

### A.    Defendants' Motion to Dismiss the Complaint

In their motion to dismiss the complaint, Defendants argue that Plaintiff's state law claim for conversion in Count I is preempted under §§ 502(a) and 514 of ERISA.  (Doc. 20, pp. 6-10.)  Specifically, Defendants argue that Plaintiff's conversion claim is preempted by § 502(a) of ERISA because the claim is nothing more than a disguised claim for Plan benefits which is not supported by any legal duty independent of the Plan.  (*Id*., pp. 8-10.) Defendants further argue that § 514(a) of ERISA preempts Plaintiff's conversion claim because it "relates to" the Plan.  (*Id*., pp. 6-8.)  The court will address each argument in turn.

### 1.    ERISA Preemption of State Law Conversion Claim

ERISA provides for uniform federal regulation of welfare benefit plans.  29 U.S.C. § 1002(3).  "Congress enacted ERISA to ensure that benefit plan administration was subject to a single set of regulations and to avoid subjecting regulated entities to conflicting

sources of substantive law." *N.J. Carpenters & Trustees v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014) (citing *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 657 (1995)). As such, state law claims are often preempted by ERISA. ERISA preemption comes in two forms: complete preemption under § 502(a), and defensive or conflict preemption under § 514(a).

A state law claim is completely preempted under § 502(a) of ERISA where "(1) the plaintiff could have brought the claim under § 502(a); *and* (2) no other independent legal duty supports the plaintiff's claim. *Id*. (citing *Pascack Valley Hosp. Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004)). Here, the first prong of this test is clearly met because Plaintiff not only could have brought a claim for plan benefits under § 502(a), but, in fact, did bring such a claim. Although Plaintiff does not specifically cite to § 502(a) in its complaint, the court easily construes Count II of the complaint, titled "ERISA Claim for Plan Benefits," as one brought pursuant to § 502(a)(1)(B). (Doc. 1, ¶¶ 128-29.) Therefore, the court must determine whether a legal duty independent of ERISA supports Plaintiff's state law conversion claim brought in Count I.

An independent legal duty exists for purposes of ERISA preemption where the legal duty "would exist whether or not an ERISA plan existed," *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 950 (9th Cir. 2009), or where there is no need "to interpret the plan to determine whether that duty exists," *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013). Here, Plaintiff's claim for

conversion is simply the flipside of the coin to its claim for benefits under ERISA. The funds Plaintiff claims Defendants have converted in Count I of the complaint are the same funds Plaintiff claims are owed for dialysis services it rendered to WW pursuant to the terms of the Plan in Count II. Thus, rather than being independent of the Plan, the question of whether Defendants had the right to recoup alleged overpayments for past services provided to WW from current and future claims for the same patient is entirely dependent upon the terms of the Plan. *See Shatzer v. Conn. Gen. Life Ins. Co.*, Civ. No. 06-cv-2296, 2007 WL 1227693, *3 (M.D. Pa. Apr. 25, 2007); *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62-63 (1987) ("[A] suit by a beneficiary to recover benefits from a covered plan . . . falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes.") (citation omitted). Stated more plainly, Plaintiff's conversion claim is actually a claim for benefits pursuant to the Plan. *See Levine v. United Healthcare Corp.*, 402 F.3d 156, 163 (3d Cir. 2005) ("Where, as here, plaintiffs claim that their ERISA plan wrongfully sought reimbursement of previously paid health benefits, the claim is for 'benefits due' and federal jurisdiction under [§] 502(a) of ERISA is appropriate."). Because no legal duty independent of ERISA or the Plan supports Plaintiff's state law claim for conversion, the court finds that it is completely preempted by § 502(a) of ERISA.

Likewise, Plaintiff's state law claim is also preempted by § 514(a) of ERISA, which preempts "any and all State laws insofar as they may now or hereafter relate to any

employee benefit plan" governed by ERISA.  29 U.S.C. § 1144(a).  "Its broad preemptive

scope reflects Congress's intent to lodge regulation of employee benefit plans firmly in the

federal domain." *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 83 (3d Cir. 2012) (citing *N.Y.

State Conference of Blue Cross & Blue Shield Plans*, 514 U.S. at 656-57); *see also Ingersoll-

Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990).  "The structure and legislative history

indicate that the words ‚relate to" are intended to apply in their broadest sense." *Cent.

States, Se. & Sw. Areas Health & Welfare Fund v. Neurobehavioral Assocs., P.A.*, 53 F.3d

172, 174 (7th Cir. 1995) (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98 (1983).  "A

law ‚relates to" an employee benefit plan, in the normal sense of the phrase, if it has a

connection with or reference to such a plan." *Delta Air Lines*, 463 U.S. at 96-97.  As stated

above, Plaintiff's state law conversion claim is in actuality a claim for benefits under an

ERISA plan.  As such, the claim clearly "relates to" an ERISA plan and is preempted by §

514(a) of ERISA.  *See Dorn v. Int'l Bhd. of Elec. Workers*, 211 F.3d 938, 948 (5th Cir.

2000) ("A state law claim, such as [plaintiff]'s claim for conversion, addressing the right to

receive benefits under the terms of an ERISA plan necessarily ‚relates to" an ERISA plan

and is thus preempted.") (citations omitted); *see also Minnis v. Baldwin Bros.*, 150 F. App'x

118, 120 n.1 (3d. Cir. 2005) (citing § 514(a) and stating that "because [Plaintiff] alleged an

ERISA plan in his complaint, any state law claims contained therein were preempted by

ERISA."); *Ferry v. Mut. Life Ins. Co.*, 868 F. Supp. 764, 770 (W.D. Pa. 1994) (stating that

state law tort claims such as conversion fall under "the broad sweep of ERISA

preemption.").

Accordingly, Plaintiff's state law conversion claim in Count I of the complaint is

preempted by both § 502(a) and § 514 (a) of ERISA and will be dismissed.

## 2.    ERISA Claims

Counts II to IV of Plaintiff's complaint assert claims under ERISA for plan

benefits, failure to provide proper notice of an adverse benefits determination, and breach of

fiduciary duty.  (Doc. 1, ¶¶ 127-37.)  Defendants argue that those counts should be dismissed

because Plaintiff failed to exhaust its administrative remedies before filing suit, and,

additionally, Counts III and IV fail as a matter of law.  (Doc. 20, pp. 10-23.)  In response,

Plaintiff argues that exhaustion of administrative remedies was futile and that it has properly

pleaded its claims in Counts III and IV.  (Doc. 24.)

### a.    Futility Exception to Exhaustion

Generally, a plaintiff may only bring a civil action to recover benefits under an

ERISA plan after the plaintiff has "exhausted the remedies available under the plan."

*Bennett v. Prudential Ins. Co.*, 192 F. App'x 153, 155 (3d Cir. 2006) (citing *Weldon v. Kraft*,

896 F.2d 793, 800 (3d Cir. 1990)).  "The exhaustion requirement is waived, however, where

resort to the plan remedies would be futile."  *Id.* (citing *Berger v. Edgewater Steel Co.*, 911

F.2d 911, 916 (3d Cir. 1990)).  Because futility is an exception to the exhaustion

requirement, "[the] party invoking this exception must provide a clear and positive showing

of futility before the District Court." *D'Amico v. CBS Corp.*, 297 F.3d 287, 290 (3d Cir.

2002).  As the Third Circuit has explained:

> "Whether to excuse exhaustion on futility grounds rests upon
> weighing several factors, including: (1) whether plaintiff diligently
> pursued administrative relief; (2) whether plaintiff acted reasonably in
> seeking immediate judicial review under the circumstances; (3)
> existence of a fixed policy denying benefits; (4) failure of the
> [defendant] to comply with its own internal administrative procedures;
> and (5) testimony of plan administrators that any administrative
> appeal was futile. Of course, all factors may not weigh equally."

*Cottillion v. United Ref. Co.*, 781 F.3d 47, 54 (3d Cir. 2015) (quoting *Harrow v. Prudential*

*Ins. Co. of Am.*, 279 F.3d 244, 250 (3d Cir. 2002)).

Here, Plaintiff received notice of the initial adverse benefits determination, *i.e.*,

Defendants" assertion that it had overpaid on previous claims for patient WW and demand

for reimbursement, by letter in March 2013.  (Doc. 1, ¶ 62.)  That letter from SCP, as well as

several others relating to additional payments for services provided to patient WW, provided

that the overpayments occurred because the claims were "paid at the incorrect

benefit/network level" and demanded that Plaintiff refund the alleged overpayments within

thirty days.  (*Id.*, ¶¶ 62-66, 68, 84-85.)  Plaintiff initially responded to the adverse benefits

determination by letter dated April 26, 2013, wherein it refused to refund the purported

overpayments and requested, *inter alia*, the underlying documentation relied upon by

Defendants in arriving at their decision.  (*Id.*, Ex. 5.)  Plaintiffs allege that they received no

response.  Instead, nearly a year later, Defendants sent a letter dated February 21, 2014,

wherein they again demanded a refund of the overpayments and included a second adverse

benefits determination relating to an additional set of purported overpayments. (*Id.*, ¶¶ 89-90.) The letter also included summary plan descriptions for 2012 and 2013.[2] (*Id.*, ¶¶ 89-90.) Plaintiff alleges that, in response, it sent multiple requests for the documents underlying Defendants" calculations, but again never received them. (Doc. 24, p. 7 of 15.)

Turning to the factors used to determine futility, it appears from the complaint that Plaintiff pursued administrative relief through letters to Defendants disputing the purported overpayments and requesting the documents relied upon by Defendants in calculating the overpayments. (Doc. 1, ¶¶ 58-59, 61, 67-77, 84-118.) Although Plaintiff may have failed to act in strict compliance with Defendants" administrative procedures, it appears clear from the face of its letters that Plaintiff was taking an appeal of the adverse benefits determinations. By failing to provide Plaintiff with information relating to the appeals process and not furnishing the documents underlying their rationale for, and calculation of, the adverse benefits determinations, Defendants also failed to act in accordance with their own internal administrative procedures. As such, further pursuit of administrative remedies may have been futile. Furthermore, because it appears that Defendants had no policy in place for denying present and future benefits to recoup prior

---

[2]     In their reply, Defendants allege that they responded with the required information via letter dated May 20, 2013, and include the letter as an attachment to their brief. (Doc. 29, p. 5 of 15.) However, Plaintiff did not include any mention of a May 20, 2013 letter in the complaint. Rather, Plaintiff alleges that the February 21, 2014 letter from Defendants was the first response Plaintiff received to its letter of April 2013. (Doc. 24, p. 6 of 15.) Because there is an apparent dispute as to the authenticity of the May 20, 2013 letter, and taking into account "the Third Circuit"s reluctance to convert motions to dismiss into motions for summary judgment," the court will not consider the May 20, 2013 letter at this stage in the litigation. *In re Shop-Vac Mktg. & Sales Practices Litig.*, Civ. No. 12-md-2380, 2014 WL 3557189, *3 (M.D. Pa. July 17, 2014) (citing *Pryor v. NCAA*, 288 F.3d 548, 559-60 (3d Cir. 2007)).

overpayments, the court cannot find that Plaintiff acted unreasonably in seeking judicial review in the present circumstances in light of Defendants withholding payments for claims to which Plaintiff would otherwise be entitled, in excess of $34,000. (Doc. 1, ¶ 83.)

Therefore, the court finds that Plaintiff has alleged sufficient facts in the complaint to support a finding that exhaustion of administrative remedies prior to filing a claim for benefits under ERISA would have been futile, and, accordingly, the court will not dismiss Count II of the complaint.

### b. Violation of § 502(c)(1) of ERISA

Plaintiff also asserts a claim for failure to produce required documents pursuant to § 502(c)(1) of ERISA. (Doc. 1, ¶¶ 131-32.) Under § 502(c)(1), a plan administrator:

> . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1). The information that a plan administrator must furnish to a plan participant or beneficiary upon request includes "a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4).

In the complaint, Plaintiff alleged that by letter dated April 26, 2013, it requested, *inter alia*, copies of the explanation of benefits for each claim related to the alleged overpayments and did not receive a written response until February 21, 2014. (Doc. 1, ¶¶ 67, 78; *see also* Doc. 24, p. 6 of 15.) Because a plan administrator must furnish summary plan descriptions, which include explanations of benefits, within thirty days of a written request for such information under § 502(c)(1) of ERISA, and Plaintiff alleges that it did not receive such information within thirty days, Plaintiff has properly pleaded a plausible claim for relief. Accordingly, the court will not dismiss Count III.

### c. Breach of Fiduciary Duty Under § 502(a)(3) of ERISA

Plaintiff's final claim, contained in Count IV of the complaint, alleges that Defendants breached their fiduciary duty in violation of § 502(a)(3) of ERISA. (Doc. 1, ¶¶ 133-36.) In Count IV, Plaintiff alleges that Defendants failed to act solely in the interests of participants and beneficiaries of the Plan for the exclusive purpose of providing benefits, failed to comply with the terms of the Plan, failed to properly pay claims made under the Plan, improperly calculated the rate at which claims were paid, and failed to notify Plaintiff that claims for benefits under the Plan had been denied. (*Id.*, ¶ 136.) Defendants contend that Plaintiff's purported breach of fiduciary duty claim is simply an impermissible repleading of its claim for benefits under Count II, and must therefore be dismissed. (Doc. 20, pp. 19-21 of 24.) The court agrees.

Section 502(a)(3) of ERISA allows plaintiffs in civil actions to "obtain other appropriate equitable relief" for violations of ERISA. 29 U.S.C. § 1132(a)(3). An equitable claim for breach of fiduciary duty, however, is generally not available where another section of ERISA provides an adequate remedy for a plan beneficiary's injury. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) ("[I]n which case such relief normally would not be 'appropriate'"). The "great majority of circuit courts have interpreted *Varity* to hold that a claimant whose injury creates a cause of action under § [502](a)(1)(B) may not proceed with a claim under § [502](a)(3)." *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106 (4th Cir. 2006) (citing decisions from the Fifth, Sixth, Eighth, Ninth, and Eleventh Circuits); *cf. Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89-90 (2d Cir. 2001) (holding that plaintiffs may simultaneously seek relief under § [502](a)(1)(B) and § [502](a)(3)). As this court has stated, "[c]ourts have interpreted ERISA to mean that a plaintiff cannot sue for breach of fiduciary duties to obtain denied benefits." *Hartman v. Wilkes-Barre Gen. Hosp.*, 237 F. Supp. 2d 552, 557 (M.D. Pa. 2002); *see also Harrow*, 279 F.3d at 254 (finding that breach of fiduciary duty claim was merely a disguised claim for benefits); *D'Amico*, 297 F.3d at 292 (same). Furthermore, the United States Supreme Court has held that a claim for money due and owing does not constitute equitable relief and is not available under § 502(a)(3). *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210-11 (2002).

Here, Plaintiff's breach of fiduciary duty claim seeks the same relief as its claim for benefits in Count II. Specifically, Plaintiff seeks, *inter alia*, money damages from

20

Defendants for the services Plaintiff provided to patient WW pursuant to the Plan, money which Defendants have not paid in order to recoup the alleged overpayments previously made pursuant to the Plan. Plaintiff alleges in Count IV that Defendants breached their fiduciary duties by "fail[ing] to pay proper reimbursement for WW's medical expenses per [the] Plan's clear and unambiguous language." (Doc. 1, ¶ 136a.) As the Third Circuit has held, however, "[a] claim for breach of fiduciary duty is 'actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA.'" *Harrow*, 279 F.3d at 254 (quoting *Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999)). Plaintiff's claim for breach of fiduciary duty is simply a disguised benefits claim as it relies on the terms of the Plan and rests on the same set of facts and seeks the same relief as its claim for benefits. Accordingly, Count IV will be dismissed because Plaintiff is provided adequate relief through its claim for benefits under § 502(a)(1)(B) of ERISA.

**B. Counterclaims**

Defendants assert two equitable counterclaims arising out of the alleged overpayments to Plaintiff, one under § 502(a)(3) of ERISA for "other equitable relief" in the form of an equitable lien by agreement, and one under common law for unjust enrichment. (Counterclaims.) Plaintiff responded with a motion to dismiss both counterclaims, contending that the first counterclaim is legal, rather than equitable, in nature, and therefore not proper under § 502(a)(3), and that Defendants failed to properly plead the elements of

unjust enrichment for the second counterclaim.  (Doc. 31.)[3]  The court will address these

arguments in turn.

### 1.    Equitable Lien by Agreement Under § 502(a)(3) of ERISA

In Count I of their counterclaims, Defendants assert that the terms of the Plan

created an equitable lien by agreement, mandating that Plaintiff return to Defendants any

overpayment of benefits pursuant to the Plan.  (Counterclaims, ¶¶ 103-04.)  The terms of the

Plan state, in relevant part:

> If, due to a clerical error [by the Plan Administrator or an agent of the
> Plan Administrator], an overpayment occurs in a Plan reimbursement
> amount, the Plan retains a contractual right to the overpayment.  The
> person or institution receiving the overpayment will be required to
> return the incorrect amount of money.

(*Id.*, ¶ 19.)  Defendants argue that this language created an equitable right to the

overpayment itself, rather than just a legal claim for monetary damages.  (Doc. 39, pp. 8-9 of

18.)  Plaintiff argues that the claim is not equitable because the actual funds representing the

overpayment are not traceable and have been exhausted.  (Doc. 41, pp. 4-5 of 10.)  The court

agrees with Defendants.

The United States Supreme Court held in *Sereboff v. Mid Atlantic Medical*

*Services, Inc.*, 547 U.S. 356 (2006), that there is no "tracing requirement" for an equitable

---

[3]      Plaintiff also disputes the fact that it received timely notice of the Plan Document and
SPD, and therefore did not have actual knowledge of the rate of payment to which it was entitled pursuant to
the Plan.  However, Defendants allege in their counterclaims that they did provide such notice via letter
dated May 20, 2013.  (Counterclaims, ¶ 71.)  At this stage of the litigation, the court accepts as true all
factual allegations contained in a complaint or counterclaim, *PPG Indus.*, 760 F. Supp. 2d at 524, and
declines to convert Plaintiff"s motion to dismiss into a motion for summary judgment.

lien by agreement. *Id.* at 365. Rather, an equitable lien by agreement attaches to the

specified property changing hands, and that property may be converted into other property

without invalidating the lien. *Id.* at 364-65. The Court's decision in *Sereboff* distinguished

its prior holding in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204

(2002), that the relief sought was not equitable where an insurer attempted to impose a lien

over funds which were not in the insured's possession and effectively sought recovery from

the insured's general assets. *Id.* at 213-14.

In *Funk v. Cigna Group Insurance*, 648 F.3d 182 (3d Cir. 2011), the Third

Circuit applied the holding in *Sereboff* to facts very similar to the instant action. In *Funk*,

the plaintiff filed an ERISA action for benefits pursuant to a long term disability plan, and

defendants counterclaimed for an overpayment that was discovered when the plaintiff

received a retroactive award of Social Security benefits. *Id.* at 189-90. Relying on *Sereboff*,

the Third Circuit held that the relevant language of the agreement between the parties, which

stated the plaintiff would be responsible for "reimburse[ment of] the full amount of any

overpayment," was sufficient to create an equitable lien by agreement and ordered plaintiff

to reimburse the overpayment to defendants, even though plaintiff no longer had the funds in

his possession. *Id.* at 194-95 (alterations in original). Significantly, the Plan's language

analyzed by the *Funk* court is nearly identical to the language contained here in the terms of

the Plan. Therefore, the court finds that whether Plaintiff exhausted the exact funds is

"immaterial," and that Defendants have sufficiently pleaded that the language of the Plan

created an equitable lien by agreement.  *Id*. at 194.  Accordingly, the court will not dismiss Count I of the counterclaims.

### 2.    Unjust Enrichment

Defendants plead an alternative basis for relief in Count II of their counterclaims under a common law theory of unjust enrichment pursuant to Pennsylvania law. (Counterclaims, ¶ 106-10.)  Plaintiff argues that Defendants have failed to properly plead a claim for unjust enrichment because they do not allege that Plaintiff was paid more than its billed fees for the medical services to WW, and therefore Plaintiff did not receive a benefit for which it did not provide value.  (Doc. 41, p. 8 of 10.)

Under Pennsylvania law, a claim for unjust enrichment is made up of the following elements: "‚(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.‴"  *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008) (quoting *Limbach Co. LLC v. City of Phila.*, 905 A.2d 567, 575 (Pa. Commw. Ct. 2006)).  A party asserting a claim for unjust enrichment "must show that the party against whom recovery is sought either ‚wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.‴"  *Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. Ct. 1985) (quoting *Roman Mosaic & Tile Co., Inc. v. Vollrath*, 313 A.2d 305, 307 (Pa. Super. Ct. 1973)).  A claim for unjust enrichment is not supported, however, merely

because the party against whom recovery is sought may have received some benefit from the claimant. *Walter v. Magee-Womens Hosp. of UPMC Health Sys.*, 876 A.2d 400, 407 (Pa. Super. Ct. 2005).

Here, Defendants have alleged that Plaintiff received and appreciated a benefit in the form of the overpayment of claims and that retention of the overpayment would be inequitable or unconscionable. (Counterclaims, ¶¶ 107-10.) Defendants further allege that Plaintiff's possession of the Plan Document and SPD as well as the multiple phone conversations by which Plaintiff verified with SCP the rate of payment it would receive pursuant to the Plan establishes that Plaintiff knew Defendants" had overpaid and that Plaintiff was not entitled to keep the full amount of the payments. (Counterclaims, ¶¶ 14, 17, 48-49, 58-61.) Although Plaintiff did provide services in exchange for the benefit it received from Defendants, Defendants have pleaded that Plaintiff's knowing receipt and retention of an amount far in excess of what Plaintiff was entitled to under the Plan Document and SPD could be inequitable. At this stage of the litigation, Defendants have met their pleading burden and shown that they have a plausible claim for relief. *Iqbal*, 556 U.S. at 679. As such, the court will not dismiss Count II of Defendants" counterclaims.

## IV.       Conclusion

In conclusion, Plaintiff's state law conversion claim in Count I of the complaint is preempted by §§ 502(a) and 514(a) of ERISA and will be dismissed. Plaintiff's claim for breach of fiduciary duty under ERISA in Count IV of the complaint will likewise be

dismissed because the court finds it is an improper repleading of Plaintiff's claim for plan benefits found in Count II of the complaint. However, Plaintiff has properly stated claims for benefits under an employee benefit plan governed by ERISA in Count II, as well as an inadequate notice claim under ERISA in Count III, and those claims will not be dismissed. As to Defendants" counterclaims, both counts have been properly pleaded and neither will be dismissed.

An appropriate order will issue.


                                          s/Sylvia H. Rambo
                                        United States District Judge


Dated: September 10, 2015