IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **U.S. RENAL CARE, INC. d/b/a U.S. RENALCARE CENTRAL YORK DIALYSIS individually and as ASSIGNEE OF PATIENT, WW,** | : | |
| | : | Civil No. 1:14-CV-2257 |
| **Plaintiff/ Counter-Defendant** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WELLSPAN HEALTH, WELLSPAN MEDICAL PLAN, THE PLAN ADMINISTRATOR OF WELLSPAN MEDICAL PLAN, and SOUTH CENTRAL PREFERRED, INC.,** | : | |
| | : | Judge Sylvia H. Rambo |
| **Defendants/ Counter-Plaintiffs** | : | |

## M E M O R A N D U M

In this action involving recoupment of alleged overpayments to a healthcare provider made pursuant to an employee welfare benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), Plaintiff has requested additional discovery beyond the administrative record. For the reasons stated herein, the court will deny Plaintiff's request.

## I. Background

### A. Facts

Plaintiff U.S. Renal Care, Inc. d/b/a U.S. Renal Care Central York Dialysis ("Plaintiff") is a medical services provider that offers dialysis services. (Doc. 1, ¶¶

20-21.) Defendant Wellspan Health ("Wellspan") is the parent organization of Defendant Wellspan Medical Plan (the "Plan"), which is a self-funded employee welfare benefit plan within the meaning of § 3(1) of ERISA, 29 U.S.C. § 1002(1), that provides medical benefits to eligible employees and their eligible dependents. (*Id.*, ¶¶ 6-8.) Defendant South Central Preferred, Inc. ("SCP" and, collectively with Wellspan and the Plan "Defendants"), which is also owned by Wellspan, acts as the claims administrator, Preferred Provider Organization, and Third Party Administrator ("TPA") for the Plan, and performs the fiduciary duties of plan administration, including making initial benefits determinations. (*Id.*, ¶¶10, 25.) Defendants work with Pennsylvania Preferred Health Network ("PPHN") as their healthcare network to provide benefits to beneficiaries under the Plan. (*Id.*, ¶ 12.)

At all relevant times, Plaintiff provided dialysis services to patient WW, who assigned his benefits under the Plan to Plaintiff. According to the Plan Document and Summary Plan Description ("SPD"),[1] the Plan provides four tiers of benefits. (*Id.*, ¶ 30.) Because there was no participating provider agreement or other contract between the Plan and Plaintiff, Plaintiff was considered an "out-of-network" provider under the terms of the Plan. (*Id.*, ¶ 26.) As an out-of-network provider within the PPHN service area, Plaintiff was generally paid benefits under

---

[1] While there are three versions of the SPD relevant to the instant dispute, one for each year of coverage in 2012, 2013, and 2014 (*id.*, ¶ 30 n.2), the terms of the SPDs are substantially similar and therefore will be referred to as a single SPD for convenience.

2

Tier 4 of the Plan, at fifty percent of the Usual Customary and Reasonable Charge ("UCR"), which is based on a calculation of average costs for medical services in that area.  (*Id.*, ¶¶ 30, 36.)

In the event of an adverse benefit determination, the Plan states that the administrator must provide written notice of the denial, which includes: the reasons for the denial; a reference to the plan provisions upon which the denial was based; a description of any additional information needed from the beneficiary to perfect the claim; notice that the beneficiary is entitled to request a review of the claim denial and a description of the appeal process, and; a statement that the beneficiary has a right to bring a civil action under ERISA following any denial or appeal. (*Id.*, ¶¶ 42-43.)  The Plan defines an adverse benefit determination as "any claim that is not paid at 100% . . . includ[ing] any amounts applied to your deductible or co-insurance as well as any amount that exceeds a Plan limit."  (*Id.*)

On April 1, 2013, SCP notified Plaintiff that all of WW's claims from December 7, 2012 through January 14, 2013 had been incorrectly paid at above UCR, and refund requests had been mailed to Plaintiff.  (*Id.*, ¶ 59.)  Those refund requests were made in varying amounts and stated that overpayment occurred due to an "incorrect benefit/network level" and demanded repayment within thirty days.  (*Id.*, ¶ 62-66, 68, 84-85.)  On April 26, 2013, Plaintiff appealed the refund demands and requested explanations of the overpayments, as well as a revised and

itemized explanation of benefits.   (*Id.*, ¶ 67.)   Defendants allege that they responded with the required information via letters dated May 20, 2013.  (Doc. 29, p. 5 of 15.)  However, Plaintiff alleges that it never received any letters dated May 20, 2013, and that it did not receive a response to its own letter of April 2013 until February 2014.  (Doc. 24, p. 6 of 15.)

By letter dated February 21, 2014, Defendants' attorneys notified Plaintiff that two categories of overpayments had been made to Plaintiff: Category One overpayments resulted from a clerical error on behalf of an employee of SCP, covered dates of service from December 7, 2012 through January 13, 2013, and totaled $59,752.16; and Category Two overpayments resulted from a mathematical error on behalf of another SCP employee, covered dates of service from January 16, 2013 through October 30, 2013, and totaled $145,920.31.  (*Id.*, ¶¶ 78-80.)  The letter further stated that if Plaintiff did not voluntarily refund the $205,672.47 of Category One and Two overpayments within ten days, Defendants would recoup the overpayments by withholding then-current and future allowable payments and possibly filing litigation.  (*Id.*, ¶ 81.)  The letter did not include any information related to Plaintiff's right to a review of the adverse benefits determination or the appeals process in general.  (*Id.*, ¶ 93.)

Plaintiff responded via counsel in a letter dated March 5, 2014, wherein it disputed the alleged overpayments and Defendants' right to recoup them, and

requested the methodology used to calculate the overpayment, any documents relied on in making such calculation, and a complete fee schedule for dialysis services charged by Defendants' non-contracted payers.  (*Id*., ¶¶ 94-96.)  Plaintiff sent additional letters on April 15, 2014, May 27, 2014, and August 27, 2014, repeating the sentiments of its March 5, 2014 letter and further requesting the underlying documents it was purportedly entitled to under ERISA, such as the adverse benefit determination.  (*Id*., ¶¶ 104-111, 118.)   None of Defendants' responses included any information regarding fee schedules, the methodology used to calculate the alleged overpayments, or any underlying documentation relied upon in calculating the overpayments, but rather reiterated Defendants' intention to recoup the overpayments.  (*Id*., ¶ 99-103, 112-117.)  According to the complaint, Defendants have in fact proceeded to recoup the alleged overpayments, withholding nearly $35,000 of payments to Plaintiff for services provided to WW between September 9, 2013 and the initiation of this action.  (*Id*., ¶ 83.)

**B.**     **Procedural History**

Plaintiff initiated this action by filing a complaint on November 25, 2014, wherein it asserted claims under both ERISA and Pennsylvania state law due to Defendants' recoupment of its purported overpayments.  (Doc. 1.)  Defendants filed a motion to dismiss the complaint on February 18, 2015 (Doc. 19).  On February 24, 2015, Defendants filed their own complaint against Plaintiff

5

containing related claims in a separate action, (Civ. No. 1:15-cv-0400, Compl., Doc. 1) (hereinafter "counterclaims"), which the court consolidated into the instant matter on March 16, 2015 (*see* Doc. 25).   In their counterclaims, Defendants asserted equitable claims under ERISA relating to the alleged overpayments as well as an unjust enrichment claim under Pennsylvania state law.   (*Id.*, ¶¶ 104, 107-110.)   On September 10, 2015, the court granted Defendants' motion to dismiss in part, with Plaintiff's claims for inadequate notice and benefits under an employee benefit plan governed by ERISA surviving.   (*See* Docs. 46 & 47.)

A case management conference was held on October 8, 2015, at which Plaintiff raised the possible need for additional discovery beyond the administrative record.   Plaintiff filed a request for the additional discovery on October 30, 2015 (Doc. 57), which Defendants opposed (Doc. 60).   Plaintiff filed its reply on November 23, 2015.   (Doc. 64.)   Plaintiff consented to Defendants' motion for leave to file a *sur-reply* (Doc. 65), which the court granted on November 30, 2015 (Doc. 66).   Defendants filed their *sur-reply* on December 4, 2015.   (Doc. 67.)   On January 19, 2016, the court ordered Defendants to submit the complete administrative record (Doc. 70), which Defendants filed on February 5, 2016 (Docs. 71 & 72).   Plaintiff did not file any objections to the administrative record.   Thus, the instant discovery dispute has been fully briefed and is ripe for the court's consideration.

II.   **Discussion**

As an initial matter, Plaintiff argues in favor of its request for additional discovery beyond the administrative record that the court should apply a *de novo* standard of review.  (Doc. 64, pp. 2-3 of 12.)  Defendants argue in response that the court should instead apply the more deferential arbitrary and capricious standard of review to Plaintiff's ERISA claims and limit its review to the administrative record.  (Doc. 67, pp. 1-2 of 6.)  Thus, the court will first decide which standard of review applies to Plaintiff's claims.

A.   **Standard of Review**

"The Supreme Court has held that 'a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'"  *Viera v. Life Ins. Co. of. N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)) (alteration in original).  Where a plan does grant such discretion to an administrator, the appropriate review is under the deferential arbitrary and capricious standard.  *Id*. (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008)); *see also Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 233 (3d Cir. 2009).  Under this standard, the "court may overturn a decision of the Plan administrator only if it is without reason, unsupported by the

evidence or erroneous as a matter of law." *Cottillion v. United Ref. Co.*, 781 F.3d 47, 55 (3d Cir. 2015) (quoting *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 439 (3d Cir. 1997)) (citations and internal quotation marks omitted).

Here, the Plan grants the administrator the:

> maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits (including the determination of what services, supplies, care and treatments are experimental and/or investigational), to decide disputes which may arise relative to a covered person's rights, and decide questions of Plan interpretation and those of fact relating to the Plan.

> The decisions of the Plan Administrator as to the facts related to any claim for benefits and the meaning and intent of any provision of the Plan, or its application to any claim, will receive the maximum deference provided by law and will be final and binding on all interested parties.

(Doc. 1-5, pp. 30-31 of 63 (emphasis removed).)  Such language clearly grants the plan administrator the requisite discretion for the court to apply the deferential standard of review.  *See Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 (3d Cir. 2012) (holding that policy language vesting the administrator with exclusive authority to administer claims and interpret the group policy "clearly triggers

application of the deferential abuse of discretion review."[2]) (citing *Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)).  Thus, the court will apply the arbitrary and capricious standard to Defendants' benefits decision.

### B.    Request for Additional Discovery

Plaintiff has requested full Rule 26 discovery, or, in the alternative, discovery beyond the administrative record in order to, *inter alia*, examine procedural defects in how Defendants handled Plaintiff's claim, as well as to unearth potential conflicts of interest and how those conflicts may have influenced Defendants' decisions.  (Doc. 57, pp. 5-6 of 10.)  Plaintiff does not cite any case law that would support a request for full discovery in an ERISA case, and indeed concedes that full discovery in this context would usually be unavailable.  Plaintiff argues, however, that the present dispute is an "unusual ERISA case" due to Defendants' failure to provide a full and fair review of their benefits decision.  (*Id.*, pp. 2-3 of 10.)  Defendants argue in response that this case is not unusual, there are no factual disputes typically found in ERISA cases, such as the beneficiary's eligibility for benefits, and the administrative record is sufficient for the court's review of the benefits decision because the review is based almost entirely upon

---

[2]  "In the ERISA context, an 'abuse-of-discretion' standard of review is used interchangeably with an 'arbitrary and capricious' standard of review."  *Viera*, 642 F.3d at 413 n.4 (citing *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 n.6 (3d Cir. 2010)).

the interpretation of Plan documents.  (Doc. 60, p. 6 of 16.)  The court agrees with Defendants.

Under the arbitrary and capricious standard, discovery generally is limited to the administrative record that was available to the administrator when reviewing the claim.  *Mitchell*, 113 F.3d at 440.  It is within the court's discretion, however, to allow limited additional discovery, narrowly tailored as to potential conflicts that may have affected the plan administrator's benefits decision.  *See Sivalingam v. Unum Provident Corp.*, 735 F. Supp. 2d 189, 196 (E.D. Pa. 2010).  As the Third Circuit has recognized, a "conflict of interest [is] one of several factors in considering whether the administrator . . . abused its discretion."  *Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009).  There are two types of conflicts that may arise: structural and procedural.  "Structural conflicts" relate to financial incentives that are inherent in self-funded plans, where the same entity that funds the plan is also responsible for benefits decisions.  *Sivalingam*, 735 F. Supp. 2d at 195 (citing *Post v. Hartford Ins. Co.*, 501 F.3d 154, 162 (3d Cir. 2007)).  Procedural conflicts relate to potential bias and can come in the form of procedural irregularities during the review of a claim.  Such irregularities may be evidenced by "self-serving selectivity" in the interpretation of the administrative record.  *Id*. (citing *Post*, 501 F.3d at 165).

Here, the administrative record contains the relevant Plan documents, including explanation of benefits, the PPHN fee schedule and other documents used to calculate UCR, as well as relevant correspondence between the parties regarding the benefits decision. Additional discovery is not necessary in order to resolve whether Defendants abused their discretion in interpreting the Plan documents and calculating UCR in determining that they had overpaid Plaintiff pursuant to the Plan. In a similar case, where the court's review hinged upon interpreting an ERISA plan to determine the level of benefits to which a plan beneficiary was entitled, the court denied the beneficiary's request for discovery because the administrative record contained everything necessary for the court to conduct a full *de novo* review of the benefits decision. *See Musser v. Harleysville Life Ins. Co.*, Civ. No. 14-cv-2041, 2015 WL 4730091, *9-10 (M.D. Pa. Aug. 10, 2015). Likewise, here, where the court will apply the less stringent deferential standard to Defendants' benefits decision, the administrative record contains everything the court needs to conduct its review, and additional discovery is unlikely to result in relevant evidence. *See* Fed. R. Civ. P. 26(b). Accordingly, the court will deny Plaintiff's request for full discovery.[3]

---

[3] The court also notes that Plaintiff has conceded in its reply brief in support of its request for additional discovery that, should the court decide to apply the arbitrary and capricious standard, as it has done herein, that full discovery would not be appropriate and Plaintiff would limit its request to additional discovery as to procedural irregularities and conflicts of interest. (*See* Doc. 64, p. 3 of 12.)

Turning to Plaintiff's request for discovery into Defendants' potential conflicts of interest, although Plaintiff mentions procedural abnormalities, it does not allege facts that would support a finding of a procedural conflict, such as Defendants "selectively emphasiz[ing] evidence in favor of a denial of benefits [or] deemphasiz[ing] evidence that suggested a contrary conclusion." *Sivalingam*, 735 F. Supp. 2d at 196 (citing *Glenn*, 554 U.S. at 118). Plaintiff also has not alleged bias or a history of benefits denials, and, thus, only the structural conflict of related entities both funding the Plan and administering claims is left. As the Third Circuit has instructed, this court will "consider any structural conflict of interest as one of several factors" when it comes time to "determin[e] whether [the] administrator abused its discretion." *Viera*, 642 F.3d at 413 (citing *Estate of Schwing*, 562 F.3d at 526). Such a structural conflict alone, however, does not warrant the allowance of discovery outside the administrative record. Accordingly Plaintiff's request for additional discovery into potential conflicts of interest will also be denied.

## III.    <u>Conclusion</u>

For the reasons stated herein, discovery beyond the administrative record is not likely to lead to relevant evidence, and Plaintiff's request for additional discovery will be denied in its entirety. An appropriate order will issue.

   s/Sylvia H. Rambo
SYLVIA H. RAMBO
Dated: March 24, 2016                    United States District Judge