IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **U.S. RENAL CARE, INC. d/b/a U.S. RENALCARE CENTRAL YORK, DIALYSIS individually and as ASSIGNEE OF PATIENT, WW,** | : : : : : | **Civil No. 1:14-CV-2257** |
| **Plaintiff/ Counter-Defendant,** | : : | |
| **v.** | : : | |
| **WELLSPAN HEALTH, WELLSPAN MEDICAL PLAN, THE PLAN ADMINISTRATOR OF WELLSPAN MEDICAL PLAN, and South Central PREFERRED, INC.,** | : : : : : | |
| **Defendants/ Counter-Plaintiffs.** | : : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

In this action involving a dispute between a healthcare provider and an employee welfare benefit plan regarding alleged overpayments made to the healthcare provider made pursuant to the plan, Plaintiff brings claims pursuant to ERISA, as well as other state law and federal claims, regarding Defendants' recoupment of the alleged overpayments, and Defendants have responded by asserting counterclaims for the remainder of the overpayments. Presently before the court are cross-motions for summary judgment. For the reasons stated herein, the court will grant Defendants' motion for summary judgment as to Plaintiff's claims, grant in part and deny in part Defendants' motion for summary judgment as to their counterclaims, deny Plaintiff's motion for summary judgment as to its

own claims, and grant in part and deny in part Plaintiff's motion for summary judgment as to Defendants' counterclaims.

## I.   **Background**

In considering the instant motions for summary judgment, the court relied on the uncontested facts or, where the facts were disputed, viewed the facts and deduced all reasonable inferences therefrom in the light most favorable to the nonmoving party in accordance with the relevant standard when deciding a motion for summary judgment. *See Doe v. C.A.R.S. Prot. Plus*, 527 F.3d 358, 362 (3d Cir. 2008).

### A.   **Facts**[1]

Plaintiff U.S. Renal Care, Inc. d/b/a U.S. Renal Care Central York Dialysis ("Plaintiff") is a medical services provider that offers dialysis services. Defendant Wellspan Health ("Wellspan") is the parent organization of Defendant Wellspan Medical Plan (the "Plan"), which is a self-funded employee welfare benefit plan within the meaning of § 3(1) of ERISA, 29 U.S.C. § 1002(1), that provides medical benefits to eligible employees and their eligible dependents. Defendant South Central Preferred, Inc. ("South Central" and, collectively with Wellspan and the Plan "Defendants"), which is also owned by Wellspan, acts as the claims

---

[1] The court has reviewed the parties' respective statements of material facts, the responses thereto, as well as the underlying administrative record. While the facts are largely undisputed, the court has cited to the relevant portion of the administrative record where a fact is in dispute.

administrator, Preferred Provider Organization, and Third Party Administrator for the Plan, and performs the fiduciary duties of plan administration, including making initial benefits determinations. Defendants work with Pennsylvania Preferred Health Network ("PPHN") as their healthcare network to provide benefits to beneficiaries under the Plan.

According to the Plan Document and Summary Plan Description,[2] the Plan provides four tiers of benefits. As an out-of-network provider within the PPHN service area, Plaintiff was entitled to benefits payments in Tier 4, which are paid at 50% of the Usual Customary and Reasonable Charge ("UCR") – the average costs for medical services in a geographic area – until a beneficiary has met their out-of-pocket maximum, and at 100% of UCR thereafter.

In the event of an adverse benefit determination, the Plan states that the administrator must provide written notice of the denial, which includes: the reasons for the denial; a reference to the plan provisions upon which the denial was based; a description of any additional information needed from the beneficiary to perfect the claim; notice that the beneficiary is entitled to request a review of the claim denial and a description of the appeal process; and a statement that the beneficiary has a right to bring a civil action under ERISA following any denial or appeal. The

---

[2] While there are three versions of the summary plan description relevant to the instant dispute, one for each year of coverage in 2012, 2013, and 2014 (*see* Docs. 72-1 & 72-2), the terms of the summary plan descriptions are substantially similar and therefore will be referred to as a single summary for convenience.

Plan defines an adverse benefit determination as "[a] denial, reduction, or termination of benefits; or . . . [a] failure to provide or make payment (in whole or in part) for a benefit."

From December 7, 2012 until October 31, 2014, Plaintiff provided dialysis services to patient WW, who was a beneficiary of the Plan through his spouse.  In return for medical services, WW assigned all of his benefits and rights under the Plan to Plaintiff pursuant to an Assignment of Benefits ("AOB"), which included the assignment of any legal or administrative claims arising under any ERISA or non-ERISA group health plan, and directed any insurance policy or health plan pay benefits for WW directly to Plaintiff. (*See* Doc. 72-3.) At all relevant times, Plaintiff was considered an "out-of-network" provider under the terms of the Plan, and there was never any participating provider agreement or other contract between the Plan and Plaintiff. As WW's assignee, however, Plaintiff was entitled to payments for services provided to WW directly from the Plan, because the Plan followed the insurance industry custom of making payments directly to assignees of beneficiaries. (*See* Doc. 83-1, ¶¶ 13, 15.) Although South Central did not receive a copy of the AOB between WW and Plaintiff until March 24, 2013, it paid Plaintiff as an assignee because Plaintiff indicated on its claims for covered services that there had been an assignment of WW's benefits. (*Id*. at ¶¶ 14, 16.)

In at least two separate phone calls, Plaintiff verified benefits with South Central, which represented that Plaintiff was an out-of-network provider and benefits would be paid, after a $250 deductible, at 50% of UCR until WW's out-of-pocket maximum for each benefit year had been met, and then at 100% of UCR. On March 21, 2013, South Central sent revised Explanations of Benefits ("EOBs") to WW, which contained an explanation of overpayments that the Plan had made to Plaintiff for WW's dialysis services, and advising him of his right to appeal. On the same date, South Central sent Plaintiff requests for refunds of the overpayments, which stated that six claims were "paid at the incorrect benefit/network level," and detailed the amounts that were paid for services and the amounts that should have been paid. South Central also sent Provider Payment Reports to Plaintiff, which included further details about the allegedly overpaid claims. In total, South Central requested a refund in the amount of $59,752.16 for the six overpaid claims. Plaintiff replied to South Central via letters dated April 26, 2013, disputing that any refund was required and requesting: 1) EOBs for each claim, including how South Central determined the overpayment; 2) the reason for the change in benefits; 3) a copy of WW's benefits under the Plan; and 4) the network being used to calculate UCR.

South Central replied to Plaintiff via letters dated May 20, 2013, stating that there had not been any change in benefits. Instead, the claims processor

erroneously paid the claims at the full billed amount rather than at 50% of UCR under the terms of the Plan. Attached to each of these letters, which responded separately to each of the six overpaid claims, were copies of the original and revised EOBs, a spreadsheet summary detailing the correctly-processed claims, as well as portions of the Plan document that defined UCR and advised of the Plan's appeal procedures should the claimant disagree with the adverse benefit determination.

On February 21, 2014, counsel for Defendants notified Plaintiff by letter that, in addition to the overpayments that resulted from a clerical error on behalf of an employee of South Central covering dates of service from December 7, 2012 through January 13, 2013, and totaling $59,752.16, a second set of overpayments occurred for dates of service from January 16, 2013 through October 16, 2013, totaling $145,920.31, which were caused by a mathematical error on behalf of another South Central employee. The letter further stated that if Plaintiff did not voluntarily refund the total $205,672.47 within ten days, Defendants would recoup the overpayments by withholding then-current and future allowable payments and possibly filing litigation.

Plaintiff responded via counsel in a letter dated March 5, 2014, wherein it disputed the alleged overpayments and Defendants' right to recoup them, and requested the methodology used to calculate the overpayment, any documents

relied on in making such calculation, and a complete fee schedule for dialysis services charged by Defendants' non-contracted payers. While counsel for Plaintiff and Defendants continued to exchange letters reiterating their positions, and referring to Plaintiff as WW's assignee, South Central sent a letter dated April 30, 2014 not to Plaintiff's counsel, but directly to WW, outlining its intention to recoup payments from Plaintiff, advising WW of his right to appeal the adverse benefits determination within 180 days, and attaching revised EOBs. Defendants subsequently began to recoup the alleged overpayments by withholding payments for services provided to WW by Plaintiff and to date has recouped a total of $45,966.08.

**B.**     **Procedural History**

Plaintiff initiated this action by filing a complaint on November 25, 2014, wherein it asserted claims under both ERISA and Pennsylvania state law due to Defendants' recoupment of its purported overpayments. (Doc. 1.) Defendants filed a motion to dismiss the complaint on February 18, 2015 (Doc. 19), and then on February 24, 2015, filed their own complaint against Plaintiff containing related claims in a separate action, (Civ. No. 1:15-cv-0400, Compl., Doc. 1) (hereinafter "counterclaims"), which the court consolidated into the instant matter on March 16, 2015 (*see* Doc. 25). In their counterclaims, Defendants asserted equitable claims under ERISA relating to the alleged overpayments as well as an unjust

enrichment claim under Pennsylvania state law. (*Id*., ¶¶  104, 107-110.) On April 6, 2015, Plaintiff filed a motion to dismiss Defendants' counterclaims. (Doc. 30.)

By memorandum and order dated September 10, 2015, the court dismissed Counts I and IV of Plaintiff's complaint, which asserted, respectively, claims for state law conversion and breach of fiduciary duty under ERISA, but declined to dismiss Plaintiff's ERISA claims for benefits and inadequate notice contained in Counts II and III, or any of Defendants' counterclaims. (*See* Docs. 46 & 47.)

On October 30, 2015, Plaintiff requested to expand discovery beyond the administrative record (Doc. 57), which Defendants opposed (Doc. 60). After the parties filed, with leave of the court, both a reply (Doc. 64) and sur-reply (Doc. 67), the court ordered Defendants to submit what they deemed to be the complete administrative record (Doc. 70). On February 8, 2016, Defendants submitted the administrative record (Doc. 72), and on March 24, 2016, the court denied Plaintiff's request to expand discovery (Doc. 74).

Following the court's order limiting the facts in this matter to the administrative record, the parties filed cross-motions for summary judgment both in favor of their own claims and against the opposing party's claims. (*See* Docs. 75, 87, 88, 95.) All four motions for summary judgment have been fully briefed (Docs. 76, 83, 91, 94, 97, 99, 100, 101) and are ripe for disposition.

## II.   <u>Legal Standard</u>

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for granting summary judgment. Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* at 248. When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party," and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v.*

*Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The nonmoving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.   <u>Discussion</u>

While the current procedural posture appears somewhat convoluted due to the presence of both Plaintiff's claims and Defendants' counterclaims, essentially each side in this dispute has moved the court to award it summary judgment as to all claims and counterclaims. Because each party has both moved for summary judgment on its own claims and the opposing party's claims, an award of summary judgment to one party regarding a claim is necessarily a denial of summary

judgment as to the opposing party's competing motion. Thus, the court will review each claim and counterclaim in turn to determine whether either party is entitled to summary judgment. In reviewing the claims, the court notes as a threshold matter that it has previously determined that the Plan grants the plan administrator, South Central, discretion to interpret the Plan, and thus the arbitrary and capricious standard applies to South Central's decisions regarding the Plan. *U.S. Renal Care, Inc. v. Wellspan Health*, Civ. No. 14-cv-2257, 2016 WL 1162268, *3 (M.D. Pa. Mar. 24, 2016). Under the arbitrary and capricious standard, the "court may overturn a decision of the Plan administrator only if it is without reason, unsupported by the evidence or erroneous as a matter of law." *Cottillion v. United Ref. Co.*, 781 F.3d 47, 55 (3d Cir. 2015) (quoting *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 439 (3d Cir. 1997)) (citations and internal quotation marks omitted). Rather than the court making its own determination as to the correct interpretation of a plan, the court must uphold a plan administrator's decision "so long as the administrator's interpretation is rationally related to a valid plan purpose and is not contrary to the plain language of the plan." (*Id.*) (citing *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 520 (3d Cir. 1997)).

A.     **Plaintiff's Claim for Benefits Under § 502(a) of ERISA**

Plaintiff's first remaining claim is for benefits pursuant to § 502(a) of ERISA. Defendants argue that they are entitled to summary judgment on this claim

because Plaintiff failed to exhaust its administrative remedies before filing suit, while Plaintiff argues that the exhaustion requirement should be waived due to futility.

Generally, a plaintiff may only bring a civil action to recover benefits under an ERISA plan after the plaintiff has "exhausted the remedies available under the plan." *Bennett v. Prudential Ins. Co.*, 192 F. App'x 153, 155 (3d Cir. 2006) (citing *Weldon v. Kraft*, 896 F.2d 793, 800 (3d Cir. 1990)).  "The exhaustion requirement is waived, however, where resort to the plan remedies would be futile." *Id.* (citing *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990)).  Because futility is an exception to the exhaustion requirement, "[the] party invoking this exception must provide a clear and positive showing of futility before the District Court." *D'Amico v. CBS Corp.*, 297 F.3d 287, 290 (3d Cir. 2002).  As the Third Circuit has explained:

> "Whether to excuse exhaustion on futility grounds rests upon weighing several factors, including: (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the [defendant] to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile. Of course, all factors may not weigh equally."

*Cottillion*, 781 F.3d at 54 (quoting *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 250 (3d Cir. 2002)).

Here, Plaintiff received notice of the initial adverse benefits determination, *i.e.*, Defendants' assertion that it had overpaid on previous claims for patient WW and demand for reimbursement, by letter in March 2013. That letter from South Central, as well as several others relating to additional payments for services provided to patient WW, provided that the overpayments occurred because the claims were "paid at the incorrect benefit/network level" and demanded that Plaintiff refund the alleged overpayments within thirty days. Plaintiff initially responded to the adverse benefits determination by letter dated April 26, 2013, wherein it refused to refund the purported overpayments and requested, *inter alia*, the underlying documentation relied upon by Defendants in arriving at their decision. Defendants responded by letters dated May 20, 2013, attaching the relevant portions of the plan documents advising Plaintiff of appeal rights and procedures and how UCR is calculated, as well as EOBs detailing the overpayments.[3] On February 21, 2014, Defendants sent a letter to Plaintiff wherein

---

[3] Plaintiff claims that it never received these letters. However, under the "mailbox rule," "if a letter 'properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed . . . that it reached its destination at the regular time, and was received by the person to whom it was addressed.'" *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 319 (3d Cir. 2014) (quoting *Rosenthal v. Walker*, 111 U.S. 185, 193 (1884)). Where there is no actual proof of delivery, receipt can be proven through circumstantial evidence such as a sworn statement by an affiant with personal knowledge of the mailing. *See id.* (citing *United States v. Hannigan*, 27 F.3d 890, 893 (3d Cir. 1994); *see also Kyhn v. Shinseki*, 716 F.3d 572, 574 (Fed. Cir. 2013). Here, the presumption of mailing has been established by the sworn testimony of the claims administrator for South Central, Rebecca Borge, that she personally mailed the six letters

they again demanded a refund of the overpayments and included a second adverse benefits determination relating to an additional set of purported overpayments. The letter also included summary plan descriptions for 2012 and 2013.

Turning to the factors to determine whether exhaustion of administrative remedies was futile, it is clear that Plaintiff did not diligently pursue administrative relief. While Plaintiff's counsel corresponded with Defendants' counsel regarding the adverse benefits determinations via several letters, Plaintiff never appealed pursuant to the appeal procedure laid out in the summary plan description. The court cannot construe Plaintiff's counsel's letters refusing to refund the overpayments as appeals where counsel had the relevant portions of the Plan document that provided the appropriate appeal procedure. Thus, the first factor weighs against a finding of futility.

The second factor to be considered is whether Plaintiff acted reasonably in seeking judicial review. The parties agree that Defendants had begun recouping overpayments by withholding subsequent payments that were otherwise due for services provided by Plaintiff. The court finds that Plaintiff was reasonable in

---

on May 20, 2013. (Doc. 72-18.) The burden of production thus shifts to Plaintiff to produce evidence to "burst the bubble" of the presumption. *See McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 287 (3d Cir. 2006); *see also* Fed. R. Evid. 301. Although the evidence needed to burst the evidentiary presumption in civil cases is minimal, Plaintiff has not met that burden here. The only evidence offered to rebut the presumption is a sworn statement by an employee of Plaintiff who was not employed during the time the letters were mailed and who therefore has no personal knowledge of the mailing or of Plaintiff's procedures at the time. Accordingly, for purposes of deciding the motions for summary judgment, the court finds that South Central mailed, and Plaintiff received, the May 20, 2013 letters.

filing suit to stop Defendants from refusing to submit payments to which Plaintiff had a right.

The next factor is whether Defendants had a fixed policy of denying benefits. Plaintiff has provided no evidence of any such policy, and Defendants deny that one existed. Accordingly, the third factor also weighs against futility.

The fourth factor to be considered is Defendants' failure to follow their own internal administrative procedures. Plaintiff argues that Defendants failed to follow their own procedures by not sending Plaintiff, as WW's assignee, notices of adverse benefits determinations, appeal procedures, and documents supporting the reason for the benefits decisions, such as EOBs or calculations of UCR. The terms of the Plan itself state that exhaustion of administrative remedies is not required if the Plan fails to follow its own procedures. (*See* Doc. 72-1, p. 126 of 193.) While Defendants initially sent the notices of the adverse benefits determinations and the right to appeal to WW as required by ERISA, it subsequently provided the same information to Plaintiff in letters dated May 20, 2013 and February 21, 2014. Although Defendants arguably did not adhere perfectly to their internal administrative procedures in mailing the adverse benefits decisions first directly to WW when they had knowledge of the assignment of WW's benefits to Plaintiff, by providing the portions of the Plan document and appeal procedure to Plaintiff upon request, Defendants substantially complied with their own procedures and gave

Plaintiff the opportunity to appeal the adverse benefits determinations. Thus, the court finds that this factor weighs against futility.

The fifth and final factor is whether a plan administrator testified that any administrative appeal would have been futile. No such testimony exists here, and thus this factor also weighs against futility.

Looking at the factors together, the court finds that an appeal of the adverse benefits determinations would not have been futile. Defendants supplied Plaintiff with the relevant portions of the Plan documents, including the appeal procedure, how non-participating providers were paid, and how UCR was calculated. Plaintiff never filed an appeal, despite being advised of how to do so, Defendants did not maintain a policy of denying appeals, and Plaintiff produced no testimony from any of Defendants' employees that an appeal would have been futile. Accordingly, the court finds that Plaintiff failed to exhaust its administrative remedies before filing its complaint, and Defendants will be awarded summary judgment as to Plaintiff's claim for benefits under § 502(a) of ERISA.

## B.   Plaintiff's Claim for Violation of § 502(c)(1) of ERISA

Plaintiff's lone remaining claim against Defendants is for failure to produce required documents pursuant to § 502(c)(1) of ERISA. Under § 502(c)(1), a plan administrator:

> who fails or refuses to comply with a request for any
> information which such administrator is required by this

16

> subchapter to furnish to a participant or beneficiary . . .
> within 30 days after such request may in the court's
> discretion be personally liable to such participant or
> beneficiary in the amount of up to $100 a day from the
> date of such failure or refusal, and the court may in its
> discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1).  The information that a plan administrator must furnish to

a plan participant or beneficiary upon request includes "a copy of the latest updated

summary plan description, and the latest annual report, any terminal report, the

bargaining agreement, trust agreement, contract, or other instruments under which

the plan is established or operated." 29 U.S.C. § 1024(b)(4). With regard to an

appeal of an adverse benefits determination, a plan administrator must also provide

upon request "all documents, records, and other information relevant to the

claimant's claim for benefits." 29 C.F.R. § 2560.503-1(h)(2)(iii).

Plaintiff argues that it requested, and never received, fee schedules and other

documents necessary to calculate UCR for the PPHN-covered area. While such

information likely would have been relevant pursuant to an appeal, as discussed

above, Plaintiff never appealed the adverse benefits determinations. Thus, the only

document that Plaintiff requested which Defendants were required to furnish under

ERISA was the summary plan description, which Defendants did provide to

Plaintiff.[4] Defendants also provided original and revised EOBs, as well as provider

---

[4] Defendants also contend that they were not required by ERISA to send any notices of adverse benefits determinations to Plaintiff because Plaintiff was not a participant or beneficiary under

payment reports. Based on the documents that Defendants provided in response to Plaintiff's requests, and the fact that the requests were not made during an appeal, the court finds that Defendants did not violate §502(c)(1) of ERISA, and will award summary judgment to Defendants as to this claim.

### C.   Defendants' Claim for Equitable Relief Under § 502(a)(3) of ERISA

Defendants' first counterclaim arising out of the overpayments to Plaintiff comes pursuant to § 502(a)(3) of ERISA for "other equitable relief" in the form of an equitable lien by agreement. An equitable lien by agreement arises where one party retains specific property belonging to another, and allows the aggrieved party, pursuant to a contract or agreement between the parties, to follow that

---

the Plan. Plaintiff was, however, the assignee of a participant and beneficiary under the Plan, which Defendants do not dispute. Indeed, Defendants themselves argued that as WW's assignee, Plaintiff must stand in the shoes of WW and cannot seek relief to which WW would not be entitled as a beneficiary under the Plan. Simply stated, Defendants cannot have it both ways. They may not contend that Plaintiff stands in WW's shoes in order to limit Plaintiff's potential remedies, but then argue that Plaintiff is not entitled to notices of adverse benefits determinations as WW's assignee. The Third Circuit has held that a medical provider has standing as an assignee to enforce the assignor's rights as a beneficiary under an ERISA plan. *See CardioNet, Inc. v. CIGNA Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014). In order to enforce its "standing to assert whatever rights the assignor[] possessed," *id*. at 178 (citation omitted) (emphasis removed), an assignee medical provider receiving payments pursuant to an ERISA plan would therefore need to receive the notice of an adverse benefits determination, requiring it to refund those payments, including its right to appeal the decision. *See Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 307 n.5 (3d Cir. 2008) (stating that once a beneficiary to an ERISA plan assigns their interest to a medical provider, the medical provider becomes the only claimant under the plan); *see also Prinicipal Mut. Life Ins. Co. v. Charter Barclay Hosp., Inc.*, 81 F.3d 53, 56 (7th Cir. 1996) ("[M]edical providers . . . who take assignments of their patients' rights to reimbursement from insurers (or other payment sources) cannot protect those rights unless the insurer notifies them when the patients' claims are denied."). Thus, while the court need not decide this issue, because the May 20, 2013 letters to Plaintiff included the required notice and right to appeal, the court rejects Defendants' assertion that it had no obligation under ERISA to provide this information directly to Plaintiff.

property into the other's hands. *See Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363-65 (2006) (citing *Barnes v. Alexander*, 232 U.S. 117, 121 (1914)). In order to create "an equitable lien by agreement, [a] contract must: 1) identify a particular fund distinct from the defendant's general assets; and 2) identify a particular share of the fund to which it is entitled." *Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan v. McLaughlin*, Civ. No. 12-cv-4322, 2014 WL 284431, *2 (D.N.J. Jan. 24, 2014) (citing *Sereboff*, 547 U.S. at 368-69). Defendants assert that the terms of the Plan created an equitable lien by agreement, mandating that Plaintiff return to Defendants any overpayment of benefits pursuant to the Plan. The terms of the Plan state, in relevant part:

> If, due to a clerical error [by the Plan Administrator or an agent of the Plan Administrator], an overpayment occurs in a Plan reimbursement amount, the Plan retains a contractual right to the overpayment.  The person or institution receiving the overpayment will be required to return the incorrect amount of money.

(Doc. 72-1, p. 165 of 193.) Defendants argue that this language created an equitable right to the overpayment itself, rather than just a legal claim for monetary damages. (*See* Doc. 94, pp. 13-18 of 33.) Plaintiff argues that the claim is not equitable because the actual funds representing the overpayment are not traceable and not attached to an identifiable fund, but, rather, to Plaintiff's general assets. (*See* Doc. 100, pp. 4-8 of 13.)

19

The United States Supreme Court held in *Sereboff* that there is no "tracing requirement" for an equitable lien by agreement. *Sereboff*, 547 U.S. at 365. Rather, an equitable lien by agreement attaches to the specified property changing hands, and that property may be converted into other property without invalidating the lien. *Id*. at 364-65. The Court's decision in *Sereboff* distinguished its prior holding in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), that the relief sought was not equitable where an insurer attempted to impose a lien over funds which were not in the insured's possession and effectively sought recovery from the insured's general assets. *Id*. at 213-14. Recently, in *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, __ U.S. __, 136 S. Ct. 651, 659 (2016), the Supreme Court held that an equitable lien by agreement is eliminated where the fund or account into which an overpayment of benefits is made has been completely dissipated on nontraceable items. The Court also clarified its holding in *Sereboff*, stating that a plaintiff seeking relief through an equitable lien by agreement "must still identify a specific fund in the defendant's possession to enforce the lien," rather than attaching the lien to a defendant's general assets. *Id*. at 660.

Here, Plaintiff argues that the holding in *Montanile* defeats Defendants' claim for an equitable lien by agreement because the overpayments were deposited into its general operating account and therefore no specific fund is identifiable for

purposes of a lien. The court disagrees. Relying on *Sereboff*, the Third Circuit has held, under similar facts as presented here, that the relevant language of the agreement between the parties, which stated the plaintiff would be responsible for "'reimburse[ment of] the full amount of any overpayment,'" was sufficient to create an equitable lien by agreement and ordered the plaintiff to reimburse the overpayment to the defendants. *Funk v. Cigna*, 648 F.3d 182, 194-95 (3d Cir. 2011) (alterations in original), *abrogated on other grounds by Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, __ U.S. __, 136 S. Ct. 651 (2016). Significantly, the language analyzed by the *Funk* court is nearly identical to the language contained here in the Plan. Defendants have identified a specific fund – overpayments deposited into Plaintiff's operating account – and established the particular share of that fund to which they are entitled – the amount of the overpayments. Plaintiff's use of the term "general" to describe its operating account does not transform that account into "general assets." Plaintiff's operating account is an identifiable fund to which Defendants can attach an equitable lien by agreement, and Plaintiff has not asserted that the funds in the account have been completely dissipated on nontraceable items. Accordingly, the court finds that the language of the Plan created an equitable lien by agreement. Additionally, the court finds that South Central's decision to recoup the overpayments from future payments due was not arbitrary and capricious because the terms of the Plan

created a contractual right to the overpayments and required Plaintiff to return them. South Central's decision to begin recouping the overpayments, after Plaintiff refused to voluntarily return the funds for several months, was not contrary to the terms or purposes of the Plan and was therefore within South Central's discretion as Plan administrator. Thus, the court finds that Defendants are entitled to summary judgment as to their equitable claim under § 502(a)(3) of ERISA.

### D.   **Defendants' Claim for Unjust Enrichment**

Defendants assert, in the alternative to their claim under § 502(a)(3) of ERISA, a common law claim of unjust enrichment pursuant to Pennsylvania law. Because the court has found above that Defendants are entitled to judgment as to their claim for an equitable lien by agreement pursuant to the terms of the Plan and § 502(a)(3) of ERISA, their claim for unjust enrichment can no longer stand, and must be dismissed. *See US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1551 (2013) ("[I]n an action brought under § 502(a)(3) based on an equitable lien by agreement, the terms of the ERISA plan govern. Neither general principles of unjust enrichment nor specific doctrines reflecting those principles . . . can override the applicable contract.") Accordingly, Plaintiff will be awarded summary judgment as to Defendants' unjust enrichment claim.

## IV.   **Conclusion**

In conclusion, the court finds that Plaintiff failed to exhaust its administrative remedies regarding its claim for benefits under ERISA contained in Count I of the complaint, and Defendants will be awarded summary judgment as to that claim. Defendants will likewise be awarded summary judgment as to Plaintiff's claim in Count III for inadequate notice under ERISA because the court finds that the May 20, 2013 letters sent to Plaintiff constituted adequate notice under ERISA. As to Defendants' counterclaims, the court finds that Defendants are entitled to equitable relief pursuant to ERISA § 502(a)(3) in the form of an equitable lien by agreement and Defendants will be awarded summary judgment on Count I. Because the court will award judgment to Defendants as to their ERISA claim, their alternative request for relief under a theory of unjust enrichment may not be maintained, and Plaintiff will be awarded judgment on Count II of Defendants' counterclaims.

An appropriate order will issue.


 s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: March 21, 2017